Curia, per O’Neall, J.
Two of the grounds of appeal are preliminary to all others. They present questions of practice merely.
1st. That the Judge was right in ordering the case to jury No. 2, is perfectly manifest from the fact stated in his report, that jury No. 1 had tried the only litigated case immediately preceding this, and that their verdict was the last handed to the clerk. In turn, jury No. 2 was next to be called to hear and determine a case. That while jury No. 1 was in their .room, one or two verdicts, by consent or without opposition, were taken from jury No. 2, was no reason why they should be exempted from their turn of laborious duty. Indeed, I know of no law which makes it imperative on the Judge to send cases in turn to the juries. It is convenient to do so. But the whole matter is entirely in the discretion of the Judge, and if he should have any reason to believe that either party had managed to send a case before a favorite jury, and that thereby justice would not be done, I have no doubt he might disappoint the trick by sending it to the other jury, *191 as was once done by Judge Huger, in the case of Lyles vs. Lyles, at Winnsborough.
2d. After jurors have been challenged, and others have been drawn in their places, neither party can, under the Act of the Legislature, challege the jurors so drawn. The State vs. Kleinback, 2 Speers, 418.
The questions next to be considered are those which object to the evidence. The first of these is that which relates to the admissibility of the declarations of the testator, that he had no will. I have no doubt such declarations were admissible. For the issue was one of fact; had the testator a subsisting will at his death ? No one certainly better knew how this stood than himself, and such declarations would be directly in aid of the presumption of fact, arising from the circumstance that no last will was found at his death. But declarations shewing that the will was probably destroyed by the testator, are always admitted, as will be seen by referring to Lillie vs. Lillie, 5 Eccles. Rep. 67, where they were received, and considered of great importance by the Judge in delivering his opinion.
It is also objected, in the 6th ground, that declarations of opinion, on the part of Elias and James Durant, the plaintiifs, that the deceased had no will, were received. Although such declarations were of so little consequence that they ought not to have weighed a feather in the balance, yet I see no legal objection to their reception. They were from the parties to the cause, and might be used by the adverse party.
It is now necessary to consider whether James R. Law, named as one of the executors, be a competent witness. He has renounced his executorship, and is not, in any way, connected with the probate in solemn form of law. He is therefore entirely disinterested, and I confess, if I were at liberty to give utterance to my own opinion, I should hold he was competent to prove the fact of execution, as well as the contents. But as the case of Taylor vs. Taylor, 1 Rich. 531, in the opinion expressed by a part of the court, holds that he is, by being named executor, rendered incompetent to attest the will, I' for the present concede *192 that he is incompetent to prove the fact of execution. But as there were at least three other competent witnesses to the excution of the will, it may stand upon their proof, or even upon the proof of Law, that such persons did witness the will (if he be competent to be sworn at all.) If he has no interest he may be sworn for any other purpose than the fact of execution. As to all other matters, there is no technical objection, such as that he must be competent at the time of attestation. Like all other witnesses, his competency must be judged of by his interest. That he has none, and never can have any, is apparent from his renunciation, which being “entered and recorded,” as directed in Swin. 865, note, Grimke Law of Ex. 164, binds him and justifies the Ordinary in granting letters testamentary to the other named executors.
The 3d, 4th and 7th grounds make the question, whether the jury were rightfully instructed by the Judge, as to the presumption of revocation. He says he stated “this general proposition, that where a testator had taken charge of his own will, and it could not be found among his papers after his death, the presumption of the law was that he had voluntarily destroyed it, for the purpose of revocation. That it was a mere presumption, however, and might be rebutted by circumstances going to shew that the will had been destroyed after his death.” That this, in words, was a little stronger than I think correct, is true, but I have no ■doubt the Judge really intended no inore than the very position which I maintain. Still, in a case like this, where the merest trifle may have produced the verdict, I think it necessary to qualify the proposition stated. That after the execution of a will has been proved, it can only be destroyed, by shewing another will revoking it, or by expressly proving burning or cancellation, is plainly and very properly declared not to be law by Colvin vs. Fraser, 4 Eng. Ecc. Rep. 113 ; Lillie vs. Lillie, and the well considered judgment of the Court of Errors of the State of New York, in the case of Betts vs. Jackson, 6 Wend. 173, overruling the same case decided in the Supreme Court, under the title Jackson vs. Betts, 9 Cow. 208. That a presumption of revocation arises from the fact that the will *193 is not found, is beyond all doubt, and is fully sustained by the cases cited. But I maintain that this is not a presumption of law, it is a presumption of fact merely, and that was, I have no doubt, the idea of the Judge below, although he called it a presumption of law, as is often done by the Judges in the cases referred to; for he said it might be rebutted by facts shewing the existence. Judge Waties struck the true idea in the case of Legare and wife vs. Ashe, 1 Bay, 457, when he said, “the non production of it, (the will) is only a prima facie presumption that it was cancelled, and not a legal conclusion
The additional, ground discloses the fact, that John D. Ashmore, the person against whom the suspicion of destroying the will was directed, and who was sworn at the trial to disprove this suspicion, had, at the time when he was examined on his voire dire, in his possession a deed from his mother, conveying to him the home plantation of the deceased, and did not disclose that fact; and that since the trial he has put the deed on record, whereby, and not before, it became known to the appellants. This is not denied by any one — even the witness, Ashmore, admits the fact, and vindicates his competency, notwithstanding the fact, by a well sustained legal argument. It may be, and I think it is true, that, legally speaking, the title to the land of the deceased is not affected by the appeal from the Ordinary. The Ordinary’s jurisdiction is entirely of personalty, (unless it may be to partition intestate real estate under the value of $1000) and hence it may be, that a matter originating in a forum having no jurisdiction over land passing by devise, can never, no matter where eventually tried, conclude the interests of those who may claim. Still, where the will of personal and real estate depends upon the same ceremonies of attestation, and the will is established on appeal, by the judgment of the court of law, it will be very difficult, if not impossible, to successfully oppose its allowance as a devise. Hence, therefore, although Mr. Ashmore may have no legal interest in the event, which would exclude him, yet he certainly has a deep interest of profit or loss in the question, and if that fact had been known at the trial, it might, and possibly *194 would, have shaken much his title to credit before the jury. The purity of trials at law is above all price. If, by concealing facts, law can be hoodwinked and justice perverted, a premium will be at once held out to -art and corruption. As far as the court can, it is our business to prevent this. It is true, that in general, after-discovered evidence is not admissible on a motion for new trial. But in many of the cases, and indeed in almost every one, the court, in refusing the motion, put the refusal upon the ground that the newly discovered evidence is oral; obviously pointing to the distinction, that written evidence discovered after the trial, where it was not in the power of the party to discover it before the trial, might be, as it was afterwards distinctly acknowledged to be, a ground for new trial. This will be seen by referring to Drayton vs. Thompson, 1 Bay, 261; The /State vs. Gordon, 1 Bay, 494; Faber vs. Baldrick, 3 Brev. 350; The State vs. Harding, 2 Bay, 267 ; Ecfert vs. Descoudres & Co. 1 Mill, 70. The case of Bogert & Kneeland vs. The Executors of Simons, 1 Mill, 143, recognised to its fullest extent the exception, that newly discovered written evidence, not within the power of the party, might be a ground for new trial. In that case Judge Nott said, “ Where the investigation of a case has led to the discovery of written evidence, which could not have been known before, or where, from circumstances not within the control of the party, the testimony could not, with the utmost diligence, have been discovered, and where it appears important to the merits of a cause, it may furnish a good ground for new trial.” In Glover vs. administrators of Miller, Harp. 267, it is said, “ the court being satisfied from the affidavit furnished in this case, that it was not in the power of the plaintiff to produce the receipt against part of the account, (on which the defendant claims a set-off) on the trial, are of opinion that a new trial should be granted.” These cases sufficiently vindicate the granting of a new trial, on the ground that the evidence to impeach the credit of Ashmore, is written, was then in his own possession, and unknown to the appellants. But the case of Levingsworth et al. ads. Fox, 2 Bay, 520, is *195 almost, in every particular, the case before the court. In that case, a new trial was granted, on the ground that Rountree, a witness produced by the plaintiff on the trial, appeared, since the trial, to be deeply interested in the event of the suit, (having a claim to a part of the same land in dispute) although, in court, he swore upon his voire dire that he was not in the least interested in the cause. Adding the authority of that case to the others, and considering that Ashmore’s interest in the question is now apparent from written testimony, then in his possession, unknown to the appellants, not disclosed by him on his examination on his voire dire, and since the trial made public by him by being put on record, we think it is our duty to* order a new trial on this ground, even if it stood alone in the case. The motion for a new trial is granted.
Richardson, Evans and Wardlaw, JJ. concurred.
Butler, J.
Before I state the particular grounds upon which I consent to a new trial in this case, I will notice some explanatory remarks in the opinion of the court, on that part of my charge which touches on the subject of revocation, arising from presumption.
The law must frequently interpose its general principles, in the absence of express stipulations, or where there are no facts to authorize a conclusion from them.
It may be that this case is not one to which this apes juris may be resorted for the decision of the case ; but I adhere to the essential principles of my circuit opinion, as to the matter alluded to, and which will appear from the following statement.
A testator executes his will and delivers it to another. Afterwards, he resumes the possession of it himself; upon his death search is made among his papers, and no will can be found. There are no facts to shew what had become of the paper. In such case the question must be, shall the will be set up, or what shall the presumption be ? Of course the presumption of law, not a conclusion of law, or such a presumption as cannot be explained. But what shall be the legal inference ? I say it should be, that the testator had revoked his will, by a voluntary de *196 struction of it. In this opinion I am fully sustained by the case from New York, and the cases quoted in the opinion of the court from the English Ecclesiastical reports.
The ground upon which I agree to a new trial is this— that John D. Ashmore was in possession of information, which the other party could not get, except from himself or his mother; and that when he was asked as to his interest in the case, he should have disclosed it. It was such as would have affected the nature of his evidence ; whilst it might not have excluded it, it would have shewn a strong temptation to establish the intestacy of the deceased.
The inclination of modern adjudications is to open the channels of evidence, and to let it depend more upon credibility than competency. In other words — to receive evidence to be decided on according to its weight, rather than exclude it altogether. But the credibility must frequently depend -on the disclosures of the witness himself. As where it appears that he had designedly, or from advisement, withheld that which was alone in his own possession, or in the possession of the party whose interest he is supporting, he should derive no advantage from it. No one shall be permitted to take advantage of his own wrong, for the purpose of obtaining an advantage in fact from it. Here the witness had a deed from his mother, the heir at law, for a very valuable tract of land, which had been devised to another in the alleged will. Who knew of the deed but himself and the maker of it ? The witnesses may or may not have known. Ashmore did know; and when asked the question, whether he had an interest, he should have disclosed the nature of his interest. At least, he should not have wilfully withheld it for the purpose of obtaining an advantage. Prom his own affidavit, he declined to answer or to say any thing of the deed, from a belief that it would not affect his competency. What he did was with cognizance and deliberation, and not from inadvertence. I do not say that the fact of the deed, if it had come out, would have affected his testimony in the estimation of the jury. I will not permit myself to form an opinion on that subject. It is enough to say *197 that the jury ought to- have an opportunity of judging with all the facts connected with his credibility or temptation to consult his real interest in the case. And I am willing for a new trial, not upon the general ground of written testimony being discovered since the trial, but upon the ground mainly, that such evidence was suppressed, when it should have been disclosed, and which the other party could not well know without such disclosure.